[No. F049646. Fifth Dist. July 27, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD MILLER et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of Facts and part I. of Discussion.

**COUNSEL**

Victor S. Haltom, under appointment by the Court of Appeal, for Defendant and Appellant Richard Miller.

Harry Zimmerman, under appointment by the Court of Appeal, for Defendant and Appellant David Reed.

Edmund G. Brown, Jr., Attorney General, Mary Jo Graves, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GOMES, J.**—After a mistrial was declared on the second day of trial as a result of a police officer's testimony, a retrial was held in which the jury convicted codefendants Richard Miller (Miller) and David Reed (Reed) on November 26, 2003, of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1))[1] and found true allegations that Miller and Reed personally caused great bodily injury (§ 12022.7, subd. (a)). In a bifurcated proceeding held during jury deliberations, Miller and Reed admitted prior prison term allegations (§ 667.5, subd. (b)). On March 5 and March 10, 2004, Reed and Miller respectively filed motions for a new trial, which the trial court denied on April 5, 2004. On January 12, 2006, the trial court sentenced Reed to 15 years in prison and Miller to 14 years in prison.[2]

Miller and Reed filed separate appeals. Reed's sole contention on appeal is that the trial court erred when it denied his motion for a new trial. Miller's sole contention on appeal is that the trial court erred when it denied his motion to represent himself during sentencing. With respect to Reed's appeal, we find no merit to his contention and therefore affirm the judgment in his

---

[1] All subsequent statutory references are to the Penal Code.

[2] A portion of these sentences was for an attempted murder charge to which appellants pled guilty on December 15, 2005.

case. With respect to Miller's appeal, we agree that the trial court erred when it denied his motion for self-representation and therefore will reverse the judgment of sentence and remand for a new sentencing hearing.

## FACTS*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISCUSSION

### I. Reed's Appeal—The Motion for New Trial*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II. Miller's Appeal—Denial of Faretta[9] Motion

Miller's sole contention on appeal is that the trial court committed reversible error when it denied his request to represent himself at sentencing. Miller contends the denial of the motion was constitutional error which necessitates reversal of the judgment.

#### A. Trial Proceedings

Miller was represented by counsel throughout the trial. Miller also was represented by counsel on his motion for a new trial, which was filed on March 10, 2004, and which the trial court denied following a hearing on April 5, 2004. Sentencing proceedings were scheduled for July 19, 2004.

On July 19, the parties moved to continue sentencing so the court that was handling another case involving Miller could render the ultimate sentence if a guilty verdict was reached in that case. Miller's counsel stated that Miller wished to represent himself at sentencing, and already had represented himself on another matter. The court stated there was no automatic right to represent oneself after trial and Miller should make his desire known at the time of sentencing. The court continued sentencing to September 20, 2004, the day trial was to begin in the other case, and stated the motion for self-representation could be requested and heard at that time. Miller explained that he wanted to "go pro per" because he wanted to do some investigation before sentencing, and if he waited until sentencing to hear the motion, the purpose of representing himself would be defeated. The court offered to

---

*See footnote, *ante*, page 1015.

[9] *Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525] (*Faretta*).

entertain a written motion on the request, but Miller asked that the motion be heard orally immediately, and the court agreed to do so.

After a brief recess, the court heard the motion. The court stated that, given the untimeliness of the request, it had to consider the quality of the representation afforded Miller, Miller's prior proclivity to substitute counsel, the reasons for the request, why Miller was making the request at this time, the stage of the proceedings, the disruption or delay that might result if the request were granted, and any other relevant factors. Miller stated he already had been found competent to represent himself in his other pending case, and he would represent himself at sentencing in that case if he was found guilty. At that time, the instant case would be combined with that one and he wanted to do some research to see if anything could help him at sentencing. When asked why his attorney could not do the research, Miller explained his attorney could not uncover the information because Miller didn't know what the information was and he wanted to get on the computer and do the research himself. Miller also stated that his attorney would not be representing him during the sentencing on the other case. The prosecutor submitted after reminding the court that Miller had been convicted in November 2003, and there had been "multiple appearances since that date and motions for new trial have been heard in this matter."

Reviewing the applicable factors, the court found counsel's representation of Miller had been "excellent," and noted Miller had not made any previous *Marsden*[10] or *Faretta* motions. The court assumed Miller would not be able to accomplish the computer research he wanted to perform if he were represented by counsel and he would not have the opportunity to conduct that research merely because he was representing himself on the other case. The court noted, however, that the request was "very untimely" since it was made after pretrial hearings and motions, a jury trial, and posttrial motions. Miller told the court that while he was not ready to proceed with sentencing that day, he would be ready by the continued hearing date in September. The court stated it was "hard to evaluate and not really applicable at this point" as to what disruption or delay might result if the request was granted. Balancing all the factors, the court exercised its discretion and denied the request because it was (1) very untimely, (2) the quality of counsel's representation had been good, (3) the reason for the request was merely to research on his own concerning his sentencing, and (4) counsel was experienced and able to present arguments on Miller's behalf at the time of sentencing.

---

[10] *People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44] (*Marsden*).

## B. *Analysis*

■ The United States Supreme Court held in *Faretta* that a criminal defendant has a constitutional right to self-representation under the Sixth Amendment to the United States Constitution if he voluntarily and intelligently elects to represent himself. (*Faretta, supra,* 422 U.S. at pp. 818–819, 835; *People v. Windham* (1977) 19 Cal.3d 121, 124 [137 Cal.Rptr. 8, 560 P.2d 1187] (*Windham*).) The *Faretta* opinion, however, did not discuss the timing of the request for self-representation. (*People v. Givan* (1992) 4 Cal.App.4th 1107, 1112 [6 Cal.Rptr.2d 339] (*Givan*).) ■ The California Supreme Court addressed this issue in *Windham*, concluding that "when a defendant has elected to proceed to trial represented by counsel and the trial has commenced, it is thereafter within the sound discretion of the trial court to determine whether such a defendant may dismiss counsel and proceed *pro se*." (*Windham, supra,* 19 Cal.3d at p. 124.)

■ In *Windham*, the trial court denied the defendant's request to represent himself, which he made for the first time at the commencement of the third and final day of trial testimony. (*Windham, supra,* 19 Cal.3d at p. 125.) Noting that the issue of the timeliness of a midtrial motion for self-representation was an issue of first impression in California, the court looked to decisions from other jurisdictions on this issue and held that "in order to invoke the constitutionally mandated unconditional right of self-representation a defendant in a criminal trial should make an unequivocal assertion of that right within a reasonable time prior to the commencement of trial." (*Id.* at pp. 127–128, fn. omitted.) Consequently, when a defendant makes a timely motion for self-representation, the trial court must grant the motion after ascertaining that the defendant voluntarily and intelligently has elected to represent himself "irrespective of how unwise such a choice might appear to be." (*Id.* at p. 128.)

■ In imposing the reasonable time requirement, the court cautioned that it "must not be used as a means of limiting a defendant's *constitutional* right of self-representation." (*Windham, supra,* 19 Cal.3d at p. 128, fn. 5.) The court explained the requirement's purpose is to prevent the defendant from misusing "the *Faretta* mandate as a means to unjustifiably delay a scheduled trial or to obstruct the orderly administration of justice. For example, a defendant should not be permitted to wait until the day preceding trial before he moves to represent himself and requests a continuance in order to prepare for trial without some showing of reasonable cause for the lateness of the request." (*Ibid.*) The court further explained that "[w]hen the lateness of the request and even the necessity of a continuance can be reasonably justified the request should be granted. When, on the other hand, a defendant merely seeks to delay the orderly processes of justice, a trial court is not required to

grant a request for self-representation without any ability to test the request by a reasonable standard." (*Ibid.*)

■ The court further held that once a defendant has chosen to proceed to trial represented by counsel, the decision whether to permit the defendant to discharge his attorney and represent himself is left to the trial court's sound discretion. (*Windham, supra,* 19 Cal.3d at p. 128.) "When such a midtrial request for self-representation is presented the trial court shall inquire *sua sponte* into the specific factors underlying the request . . . . Among other factors to be considered by the court in assessing such requests made after the commencement of trial are the quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion." (*Ibid.*)

Applying its holding to the defendant's case, the court noted the defendant did not make a pretrial request to represent himself and stated that "[t]he absence of such a request amounts to a waiver of the unconditional right to proceed by way of self-representation," thereby leaving the "midtrial motion for self-representation" to be addressed to the trial court's sound discretion. (*Windham, supra,* 19 Cal.3d at p. 129.) The court found no abuse of discretion in the trial court's denial of the motion, since the defendant's sole reason for the request was that his admittedly competent counsel had been unable to present a stronger case on the theory of self-defense and the request came at an exceedingly late stage of the trial. (*Id.* at pp. 129–130.)

Here, the trial court concluded Miller's request for self-representation was untimely because it was made after the jury found him guilty and his new trial motion was denied. Accordingly, the court applied the factors set forth in *Windham* and exercised its discretion in denying the motion. Miller contends the request was timely because it was made well before sentencing, and therefore the court was required to grant it. The People, however, argue Miller was not entitled to self-representation as a matter of right because his request was not made prior to the commencement of trial.

The timeliness of a *Faretta* motion made after a finding of guilt but before sentencing appears to be a question of first impression. In *People v. Mayfield* (1997) 14 Cal.4th 668, 809–810 [60 Cal.Rptr.2d 1, 928 P.2d 485] (*Mayfield*), the defendant in a capital trial contended the trial court erred in denying his motion for self-representation which he first made after the jury returned its penalty verdict. The defendant argued the capital sentencing proceeding is a separate phase from the trial, and therefore the trial court erred when it found his motion to be untimely because it was not made before commencement of

the guilt phase. (*Ibid.*) The Supreme Court noted it had not addressed the timeliness of a motion made after the penalty verdict. (*Id.* at p. 810.) The court agreed, however, that even assuming "for the sake of argument that a postverdict self-representation motion may be timely if made a reasonable time before sentencing," the motion was untimely. (*Ibid.*) The court noted that "[i]n determining what constitutes a 'reasonable time' before sentencing, a trial court must necessarily consider the delay that would be occasioned by granting the motion." (*Ibid.*) Because the resulting delay if the defendant's motion were granted would be at least six months and maybe longer, which "would compromise the orderly and expeditious administration of justice," the court concluded the motion was untimely. (*Ibid.*)

Although it appears no published case in California has addressed whether a postverdict self-representation motion may be timely if made a reasonable time before sentencing, our Supreme Court has held that, for purposes of assessing the timeliness of a motion for self-representation, a motion made between the guilt and penalty phases in a capital prosecution is untimely, and therefore subject to the trial court's discretion, because the guilt and penalty phases are not separate trials, but parts of a single trial. (*Mayfield, supra,* 14 Cal.4th 668, 810; *People v. Hardy* (1992) 2 Cal.4th 86, 194 [5 Cal.Rptr.2d 796, 825 P.2d 781]; *People v. Bloom* (1989) 48 Cal.3d 1194, 1220 [259 Cal.Rptr. 669, 774 P.2d 698]; *People v. Hamilton* (1988) 45 Cal.3d 351, 369 [247 Cal.Rptr. 31, 753 P.2d 1109].) As the court explained in *Hamilton,* "the penalty phase has no separate formal existence but is merely a stage in a unitary capital trial. . . . [A]nd more important, the connection between the phases of a capital trial is substantial and not merely formal." (*Id.* at p. 369.) Relying on the reasoning in *Hamilton,* appellate courts have concluded that a motion for self-representation made after the jury returns its verdict on a primary offense but prior to commencement of a bifurcated trial on prior convictions is untimely and subject to the trial court's discretion because proceedings on the priors are merely part of the trial. (*People v. Rivers* (1993) 20 Cal.App.4th 1040, 1047–1048 [25 Cal.Rptr.2d 602] (*Rivers*); *Givan, supra,* 4 Cal.App.4th at pp. 1113–1115.) In each of these decisions, the courts concluded that the motions were actually made during trial, even though they were brought prior to the start of a second phase or stage of the trial. (See *Hardy, supra,* 2 Cal.4th at pp. 194–195; *Hamilton, supra,* 45 Cal.3d at p. 369; *Rivers, supra,* 20 Cal.App.4th at p. 1048; *Givan, supra,* 4 Cal.App.4th at pp. 1114–1115.)

 These cases demonstrate that whether a trial court must grant a request for self-representation as a matter of right or whether it has discretion to grant the motion turns on whether the request is made during trial. We conclude Miller's request for self-representation, made after the jury returned its verdict and his new trial motion had been denied, but well before sentencing, was not made during trial for the simple reason that sentencing

occurs posttrial. (See, e.g., *Leversen v. Superior Court* (1983) 34 Cal.3d 530, 540 [194 Cal.Rptr. 448, 668 P.2d 755] [noting posttrial proceedings include sentencing]; *People v. Winbush* (1988) 205 Cal.App.3d 987, 991 [252 Cal.Rptr. 722] [holding defendant can make *Marsden* motion posttrial, "either for the purpose of sentencing or of making a new trial motion"].) Sentencing is not like a bifurcated trial on prior convictions, which the *Rivers* court recognized was part of "a proceeding which had been divided into separate components for defendant's benefit." (*Rivers, supra,* 20 Cal.App.4th at p. 1048.) Instead, sentencing is a proceeding separate and distinct from the trial.

■ The concern that led to the conclusion that motions for self-representation made during trial are subject to the trial court's discretion, namely the potential disruption of proceedings already in progress, simply does not apply to sentencing hearings, which are separate proceedings from the trial and occur after the trial has been completed. This is not to say that every request for self-representation at sentencing will be timely. Much as a request to represent oneself at trial must be made a reasonable time before trial commences, the request for self-representation at sentencing must be made within a reasonable time prior to commencement of the sentencing hearing. (See *Mayfield, supra,* 14 Cal.4th at p. 810 [assuming postverdict self-representation motion may be timely if made a reasonable time before sentencing].)

■ Here, Miller's request for self-representation, although made after the jury rendered its verdict and a new trial motion was made and denied, was not made during trial. Once the jury returned its verdicts, the trial was finished, and once the court denied the new trial motion, all that remained was sentencing. When Miller brought his motion for self-representation, he was not due to be sentenced for two more months. Miller told the court that he would be prepared at the new sentencing date. Miller's request having been made well in advance of the sentencing hearing, it was timely.

Since the request was timely, Miller had an absolute right to represent himself at sentencing and the trial court was required to grant his request for self-representation, which was unequivocal, as long as he was mentally competent and the request was made "knowingly and intelligently, having been apprised of the dangers of self-representation." (*People v. Welch* (1999) 20 Cal.4th 701, 729 [85 Cal.Rptr.2d 203, 976 P.2d 754].) As the trial court here failed to apply the appropriate standard and instead treated the request as untimely, reversal of Miller's sentence is required. (*Id.* at p. 729 [reversal of timely *Faretta* motion is reversible per se].)

## DISPOSITION

The judgment as to Reed is affirmed. Miller's conviction not being at issue, the judgment of conviction as to Miller is affirmed. Miller's judgment of sentence, however, is vacated and the matter remanded to the trial court for resentencing.

Vartabedian, Acting P. J., and Wiseman, J., concurred.